**RAILWAY LABOR EXECUTIVES' ASSOCIATION, et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION, et al., Respondents,**

and

**Daniel R. Murray, et al., Intervening Respondents.**

**Nos. 89–3148, 89–3208.**

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 20, 1989.

Decided Feb. 1, 1990.

Robert Wheeler, Louise S. Pearson, Oppenheimer, Wolff & Donnelly, Chicago, Ill., for Illinois Cent. R.R. Co.

Anton Valukus, Asst. U.S. Atty., Chicago, Ill., Robert S. Burk, I.C.C., Washington, D.C., William Redmond, I.C.C., Chicago, Ill., Richard L. Thornburg, U.S. Atty. Gen., Virginia Strasser, I.C.C., Washington, D.C., John J. Powers, III, Robert J. Wiggers, Dept. of Justice, Appellate Section, Antitrust Div., Washington, D.C., for I.C.C. and U.S.

E. Barrett Prettyman, Jr., Thomas B. Leary, Peter F. Rousselot, George W. Mayo, Jr., Eric VonSalzen, John C. Keeney, Jr., Paul C. Skelly, Hogan & Hartson, Washington, D.C., Cannon Y. Harvey, John McDonald Smith, San Francisco, Cal., Kendall T. Sanford, Denver, Colo., for Rio Grande Industries, Inc., Southern Pacific Transp. Co., Denver and Rio Grande Western R.R. Co., St. Louis Southwestern Ry. Co. and SPCSL Corp.

Randall E. Mehrberg, Jason W. Bruce, Donald R. Cassling, Barry Sullivan, Jenner & Block, Chicago, Ill., for Daniel R. Murray, Trustee of the Chicago Missouri & Western Ry. Co.

Before CUDAHY, POSNER, and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

Two rail unions have filed a petition for review of a final order by the Interstate Commerce Commission approving the purchase of a rail line. *Finance Docket No. 31522, Rio Grande Industries, Inc.—Purchase and Trackage Rights—Chicago, Missouri & Western Ry. Co. Line Between St. Louis & Chicago*, 5 I.C.C.2d 952 (1989). They believe that the order gives insufficient protection to the rights of workers on the line. A competing railroad has also filed a petition for review; its concern is with a potential diversion of revenue from its own lines. The respondents (principally the ICC) and the intervening respondents (principally the parties to the purchase) have moved to dismiss the petitions for review on the ground that exclusive jurisdiction to review the Commission's order lies in the bankruptcy court. The petitioners oppose the motion. The motion has been briefed and is ripe for decision.

The bankruptcy of the Chicago, Missouri & Western Railway is pending before a bankruptcy judge in Chicago. The Rio Grande wanted to purchase a line from the bankrupt road. The transaction required the Commission's permission under 49 U.S.C. §§ 11103, 11343, 11344. The bankruptcy judge initially directed the Commission to review the proposed transaction within thirty days of the parties' applying to it for permission, and the Commission duly established a schedule and procedure for doing this. Then the judge decided he lacked authority to impose a time limit (we shall see why in a moment), and issued an amended order, deleting the limit but pleading with the Commission to act within thirty days lest the transaction be abandoned, to the detriment of the bankrupt railroad and its creditors. The Commission acted, in the order now sought to be reviewed.

The courts of appeals have exclusive jurisdiction to review final orders of

the ICC, "except as otherwise provided by an Act of Congress." 28 U.S.C. §§ 2321(a), 2342(5). Among the other Acts is 28 U.S.C. § 1336(b), which provides that when a district court refers a question to the ICC, the referring court shall have exclusive jurisdiction of any civil action to enforce or annul the Commission's order resolving the question. For these purposes, "district court" includes bankruptcy court, *In re Total Transportation, Inc.*, 84 B.R. 590 (D.Minn.1988), because bankruptcy courts are adjuncts of the district courts. 28 U.S.C. §§ 157(a), 1334(a). The petitioners point out that the district courts' review jurisdiction under section 1336(a) is limited to monetary orders of the Commission, but what bearing that has on their jurisdiction under 1336(b) eludes us. If the bankruptcy judge made a reference to the ICC within the meaning of section 1336(b), we have no jurisdiction to review the ICC's order.

In his initial order, the bankruptcy judge imposed a thirty-day deadline on the Commission. For authority to do this he relied on section 1172(b) of the Bankruptcy Code, 11 U.S.C. § 1172(b), which provides that a plan of reorganization may not propose a transfer of a line owned by a bankrupt railroad unless the proponent of the plan of reorganization gets the ICC's permission. The statute also authorizes the bankruptcy court to fix a time within which the ICC must act and empowers that court to review the Commission's decision—so this is another Act of Congress that carves out an exception to the exclusive jurisdiction of the courts of appeals to review final orders of the Commission. As the bankruptcy judge realized after issuing his first order, the proposed transfer to the Rio Grande is not pursuant to a plan of reorganization, and therefore section 1172(b) does not apply. But the transfer still requires the ICC's permission and that is why the judge begged the Commission to act quickly on the application for approval of the transfer.

Had the bankruptcy judge been acting under section 1172(b), he would have exclusive jurisdiction to review the Commission's order irrespective of section 1336(b), but the fact that he was not acting under section 1172(b) does not preclude such jurisdiction. Section 1336(b) speaks broadly of a reference to the Commission. The reference need not be under a specific statute, let alone one such as section 1172(b) expressly vesting review power over the Commission's order in the district court; with regard to such statutes section 1336(b) is superfluous. So we must still decide whether there was a reference here.

The only reference in the bankruptcy judge's original order was the direction that the Commission act within thirty days on the parties' application for permission to transfer the line. The second order deletes the direction and merely "calls upon" the ICC to act within the thirty days. Neither order contains an explicit reference. Maybe this is why 11 U.S.C. § 1172(b) explicitly empowers the bankruptcy judge to review the Commission's order rather than relying on the implications of 28 U.S.C. § 1336(b): there is no reference under section 1172(b), and there was—it can be argued—none here after, as well as before, the judge discovered that section 1172(b) was not applicable.

The insight behind section 1336(b) is that if a question within the purview of the ICC arises in the course of a district court proceeding, submission of the ICC's answer in the first instance to the district court rather than to the court of appeals will avoid a cumbersome and potentially protracted bifurcation of judicial review. S.Rep. No. 1394, 88th Cong., 2d Sess. (1964), U.S.Code Cong. & Admin.News 1964, p. 3235. The court of appeals would have to hear the same case twice—once in reviewing the ICC's order and the second time in reviewing the district court's final judgment. From the perspective of avoiding piecemeal appeals, reference by the district court is not dependent on that court's communicating directly with the Commission. Especially not in this case. Just as the proponent of a plan of reorganization must file an application with the Commission under 11 U.S.C. § 1172(b) for approval of a line transfer, so the parties to the present transaction were required by 49 U.S.C. §§ 11103, 11343, and 11344 to file an application with the Commission for approval of

their transaction. In either type of case it would seem to be superfluous for the court to have to issue an order formally referring the request for approval to the Commission. Therefore the only consequence of our denying the motion to dismiss, it might seem, would be to elicit such superfluous acts.

But this is too liberal an interpretation of section 1336(b). It exemplifies the persistent fallacy of confusing the rationale behind a statute with the meaning of the statute. There is no indication that in enacting section 1336(b), primarily as a convenience to the federal government as a shipper of goods, S.Rep. No. 1394, *supra*, Congress intended to abolish the long-established procedure under which, if the validity of a rail or motor carrier tariff was drawn into question in a proceeding in a federal district court to recover damages for undercharges or overcharges, the district court would stay proceedings before it while the parties resorted to the Commission, whose order determining the validity of the tariff would be appealable in the usual way—not sent back to the referring court for review. A stay is not a reference; the old procedure survives section 1336(b). *Seaboard System R.R. v. United States,* 794 F.2d 635, 639 (11th Cir.1986); *Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n, Inc.,* 683 F.Supp. 1375, 1378 (N.D.Ga.1987); *Rebel Motor Freight, Inc. v. Southern Beverage Co.,* 673 F.Supp. 785, 790 (M.D.La.1987). The rationale of section 1336(b) does not depend on a reference; nevertheless the statute requires it.

There is a practical reason for this. *City of New Orleans v. Southern Scrap Material Co.,* 704 F.2d 755, 759 (5th Cir.1983), in denying a motion to dismiss the petition for review because the district court had made it clear that it was *not* referring the matter in issue to the ICC, points out that unless the parties know that the proceeding before the ICC is a reference proceeding they may inadvertently allow the ninety days they have in which to seek review of the Commission's action in the referring court to slip away without petitioning for review in that court. 28 U.S.C. § 1336(c). The danger was real in *Southern Scrap.* The

district court had actually dismissed the case before it as soon as the Commission rendered its order, implying that the parties were not expected to come back to the district court: how were the parties to know that the proceeding before the ICC was really a referred proceeding rather than an independent one?

So there must be a *reference* to bring section 1336(b) into play, but the word "refer" need not be intoned. In our case the bankruptcy judge did not stay the bankruptcy proceeding so the parties could go to the ICC. He ordered the ICC to decide the validity of the transfer within thirty days—then toned that down to calling upon the ICC to act within that period. For future reference (pun intended) we suggest that the referring court use the word "refer," as in *Rebel Motor Freight, Inc. v. Southern Beverage Co., supra,* 673 F.Supp. at 790, so that the parties can be in no doubt of which court to go to for judicial review of the ICC's order. But the intention of the bankruptcy judge was plain (so plain that the petitioners have also filed petitions for review with him), and no more is necessary. A judge "who intends to refer a case should make it clear that he is doing so." *City of New Orleans v. Southern Scrap Material Co., supra,* 704 F.2d at 759. The bankruptcy judge did this. Were there any doubt he could dispel it by retroactively adopting the ICC proceeding as a referred proceeding. *Id.* But here the intention is sufficiently clear to make that formality unnecessary.

The bankruptcy court has exclusive jurisdiction over the Commission's order. The motion to dismiss is therefore granted and the petitions for review are

Dismissed.