ROTH, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s opinion because I do not think the district court had jurisdiction to review the ICC’s order in this case.
Except as otherwise provided by Congress, Title 28 U.S.C. § 2321 vests exclusive jurisdiction in the federal courts of appeal to “enjoin or suspend, in whole or in part, a rule regulation, or order” of the Interstate Commerce Commission (now Surface Transportation Board). 28 U.S.C. § 2321. In addition, under 28 U.S.C. § 2342(a), “The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... (5) all rules, regulations or final orders of the [ICC] made reviewable by § 2321 of this title.” As these statutes demonstrate, the courts of appeal ordinarily have jurisdiction over cases in which a party seeks to challenge an ICC decision.
I recognize that there are exceptions to this general rule. For example, under 28 U.S.C. § 1336(b), a district court retains exclusive jurisdiction over a civil action to review an ICC order when that order arises out of a prior referral. However, I conclude that the ICC’s order in this case does not fit the “arising out of’ language of § 1336(b).
Ametek initially sought to have the district court refer two issues to the ICC: the reasonableness of Panther Valley’s rates and the reasonableness of Panther Valley’s practices in negotiating a contract to force Ametek to pay demurrage charges. The district court, however, specifically limited its referral to one issue, the reasonableness of Panther Valley’s rates. Ametek then filed a separate proceeding directly with the ICC regarding the reasonableness of Panther Valley’s practices. The ICC consolidated this separate proceeding with the issue already referred to it by the district court. The ICC then issued an opinion declaring Ametek not liable for demurrage charges under common law principles. The ICC did not rule on the reasonableness of Panther Valley’s rates.
I disagree with the majority that the ICC’s decision regarding Ametek’s liability for de-murrage charges arose out of the district court’s referral within the meaning of § 1336(b). True, the ICC may have felt that a decision regarding the reasonableness of Panther Valley’s rates dictated a determination of whether the rates applied at all. Nevertheless, the ICC’s legal authority for making this determination did not originate in the district court referral. It was specifically presented to the ICC in Ametek’s separate action filed directly with the ICC.
Moreover, the ICC acknowledged that it was going beyond the scope of its expertise and, indeed, beyond the specific referral from the district court when it stated:
We are aware that courts are the primary authority on matters such as agency and contract law. However, where the applicability and reasonableness of interstate railroad transportation contracts are at issue, our expertise and precedents are also due consideration. See 49 U.S.C. 10601(d).
The ICC’s invocation here of 49 U.S.C. § 10501(d) is significant because it demonstrates that the Commission was relying not *565 on the district court’s referral, but on the ICC’s own inherent authority to review the rules and practices of rail carriers.[1]
Furthermore, when the district court affirmed the ICC’s authority to consider the issue of liability, the district court suggested that it was Ametek’s separate complaint which provided the ICC with the authority to rule on Ametek’s liability for the charges. The court first noted that
[Because 49 U.S.C. § 11701(b) permits the ICC to dismiss only those complaints filed with it that fail to “state reasonable grounds for investigation and.action,” the ICC was statutorily obligated to address the separate complaints filed by Ametek.
Union Pac. R.R. Co. v. Ametek, Inc., No. 90-1396 at 15 (M.D. Pa. Sept 8, 1995) (mem.). The district court went on to state:
Notwithstanding the parties’ agreement that this Court has jurisdiction over the ICC Decision pursuant to 28 U.S.C. § 1336(b), I am constrained to note that jurisdiction is far from clear.... Only the reasonableness of demurrage rates was referred to the ICC in this case. . While it may have been proper for the ICC to address the threshold question of tariff applicability, that issue was presented as a result of separate complaints filed by Am-etek. It thus could be argued that the ICC Decision does not arise out of the referral in this case, so that any challenge to the ICC Decision should have been pursued in the appropriate court of appeals.
Union Pac. R.R. Co., No. 90-1396 at 27 n.18 (emphasis added). I agree with the district court’s statement that one could argue that the ICC’s authority to consider Ametek’s liability for demurrage charges did not stem solely from the district court’s referral. In fact, the ICC’s authority to consider the reasonableness of Panther Valley’s practices stemmed from Ametek’s separate proceeding filed directly with the ICC. I conclude, as a consequence, that the district court lacked jurisdiction to review the ICC’s order under § 1336(b).
My conclusion is supported by a similar situation which the Sixth Circuit confronted in Island Creek Coal Sales Co. v. I.C.C., 561 F.2d 1219 (6th Cir.1977). In Island Creek, the court interpreted the scope of the jurisdiction under 28 U.S.C. § 1336(a), which provides for district court review of ICC orders that concern the payment of money or collection of fines. The shippers challenged the ICC’s power to promulgate certain demur-rage increases. Since the case involved the validity of the ICC’s order for the payment of money and not just the amount payable, the Sixth Circuit held that the case was within the appellate court’s exclusive jurisdiction. Id. at 1222. The nature of the issue to be reviewed — the ICC’s power to promulgate increases and not merely the amount of the increase — placed the appeal beyond the scope of the narrow jurisdictional exception created for the district court by § 1336(a).
Island Creek is analogous to this case because it involves the scope of the jurisdiction for district court review created by § 1336. Moreover, we have adopted Island Creek’s strict interpretation of district court jurisdiction under § 1336(a) in Empire-Detroit Steel Division of Cyclops Corp. v. I.C.C, 659 F.2d 396 (3d Cir.1981).[2] I see no reason to apply a strict interpretation to § 1336(a) and a looser interpretation to § 1336(b). The majority seem, however, to interpret § 1336(b) loosely. I believe to the contrary that we should interpret § 1336(b) strictly and limit district court appellate jurisdiction to the express language of the statute.
Finally, I disagree with the majority’s reliance on Judge Posner’s opinion in Railway Labor Executives’ Association v. I.C.C., 894 F.2d 915 (7th Cir.1990). In RLEA, the Seventh Circuit interpreted the referral language of § 1336(b) and concluded that district courts must make some positive “reference” to the ICC in order to invoke the referral jurisdiction provided by the *566 statute. The purpose of such a reference is “so that the parties can be in no doubt of which court to go to for judicial review of the ICC order.” Id. at 917.[3] In a.situation such as the case before us, where the ICC has simultaneously considered a question referred by the district court and a proceeding filed directly with the ICC, it seems to me that a bright line rule is most helpful to the parties in determining where to file an appeal. I submit that only those issues should be appealed to the district court which were expressly referred to the ICC by the district court. I do not concur in the majority’s implication that the word “order,” as it is used in § 1336(b), is broader in scope than the word “issue.” To the contrary, I believe the statute provides for district court review of solely those issues it has referred to the ICC. Any other issues decided by the ICC in a parallel proceeding, such as we have here, should be appealed to the court of appeals.
The application of such a strict interpretation of § 1336(b) would reduce the chance that appeals are made to the wrong court. Counsel need only look to the language of the district court’s referral to determine whether the issue was properly reviewable by a district court under § 1336(b). If the issue was not one specifically referred to the ICC by the district court, it would be reviewable only by the court of appeals. This regime would eliminate uncertainty among the parties and obviate complicated inquiry over the exact source of the ICC’s authority to determine a separate issue, be it the referral, a separate proceeding, or some other statute.
Because the propriety of Panther Valley’s practices was not an issue referred to the ICC by the district court, I conclude that the appeal of that issue should have come directly to the court of appeals. For this reason, I find that the district court should not have heard the appeal from the ICC and I respectfully dissent.

. § 10501(d) states in pertinent part: "The jurisdiction of the Commission ... over transportation by rail carriers, and the remedies provided in this subtitle with respect to the rates, classifications, rules, and practices of such carriers, is exclusive.”

. In Empire-Detroit we stated: "We agree with those courts of appeals which have held that review of orders denying reparations on legal or policy grounds is available by petition for review in the courts of appeals.” Empire-Detroit, 659 F.2d at 397.

. The issue in RLEA was whether the transmittal of a question by the bankruptcy court to the ICC was a "referral" if the word "refer” was not employed. The court concluded that it was a referral.