# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3074

_____

Railroad Salvage & Restoration, Inc.;    *
G.F. Wiedeman International, Inc.,    *
   *
         Petitioners,    *
   *
     v.    *
   *
Surface Transportation Board; United    *    Petition for Review of an Order of
States of America,    *    the Surface Transportation Board.
   *
         Respondents,    *
   *
Missouri & Northern Arkansas    *
Railroad Company,    *
   *
         Intervenor.    *

_____

Submitted: May 10, 2011
Filed: August 11, 2011
_____

Before MELLOY and BENTON, Circuit Judges, and GRITZNER,[1] District Judge.
_____

MELLOY, Circuit Judge.

_____

[1] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

Railroad Salvage & Restoration, Inc. ("Railroad Salvage") and G.F. Wiedeman International, Inc. ("Wiedeman") (collectively referred to as "Petitioners") have filed a joint petition for review of an order of the Surface Transportation Board ("Board"). In the order, the Board found, among other things, that a railroad company's practice of charging Petitioners interest on certain unpaid charges at a rate of 1–2% per month was not an unreasonable practice under 49 U.S.C. § 10702(2). We refer to this issue as the "interest-rate issue," and Petitioners argue that the Board's determination of this issue was erroneous.

The Board has filed a motion to dismiss the petition. In the motion, the Board argues that 28 U.S.C. § 1336(b) vests a federal district court with (and deprives this court of) jurisdiction to review the Board's determination of the interest-rate issue to the extent Railroad Salvage raises it. We agree. Accordingly, we dismiss the petition to the extent it asks this court to review the Board's resolution of the interest-rate issue with respect to Railroad Salvage. For reasons explained below, we will hold the remainder of the petition in abeyance.

## I. Background

Railroad Salvage and Wiedeman are commonly controlled, closely held corporations that salvage used railroad tracks. Operating out of the same railyard in Joplin, Missouri, Petitioners receive used railroad tracks at their railyard and sort the tracks according to quality. Petitioners keep the higher-quality tracks and ship the lower-quality tracks by rail to buyers in Arkansas and Mexico.

Petitioners rely upon the Missouri & Northern Arkansas Railroad Company ("MNA") to ship tracks to their buyers. Petitioners' railyard is connected to railroad lines that MNA controls pursuant to a lease with the Union Pacific Railroad. Additionally, Petitioners use rail cars supplied by MNA to transport railroad tracks to buyers.

When Petitioners use one of MNA's rail cars, Petitioners have twenty-four hours to load and forty-eight hours to unload the car. If Petitioners cannot load or unload a car within these time limits (referred to as "free time"), then MNA's tariffs require that Petitioners pay a "demurrage" charge. Demurrage charges accrue at a rate of $50–65 for each day a car is detained beyond the allotted free time. MNA's tariffs further provide that if Petitioners do not pay their demurrage charges in a timely manner (generally 10–30 days following the date of billing), Petitioners must pay interest on the unpaid charges at a rate of 1–2% per month.

On February 20, 2007, MNA filed an action against Railroad Salvage in federal district court to recover unpaid demurrage charges and interest. In its complaint, MNA alleged that Railroad Salvage detained over 300 cars past their free time from January 2005 to October 2006. The alleged length of detention on each car ranged from as little as one day to as many as ninety-seven days. In total, MNA sought to recover over $195,000 in demurrage charges and nearly $45,000 in interest from Railroad Salvage.

On March 26, 2007, MNA also filed an action against Wiedeman to recover unpaid demurrage charges and interest. Rather than filing the action in federal court, however, MNA filed this action in a Missouri circuit court. MNA alleged that Wiedeman had detained over thirty cars past their free time from September 2006 to January 2007. The alleged length of detention on each car ranged from as little as one day to as many as twenty-one days. In total, MNA sought $11,895 in demurrage charges and $732 in interest from Wiedeman.

Both Petitioners defended against MNA's claims by arguing that five of the ways MNA calculated demurrage charges constituted unreasonable practices in

violation of 49 U.S.C. § 10702(2).[2]  Subsequently, both Railroad Salvage and Wiedeman filed motions with the federal district court and the Missouri circuit court, respectively.  In these motions, Petitioners sought to have both courts refer to the Board the issues of whether MNA had committed the five unreasonable demurrage-charge practices as Petitioners had alleged.  The courts granted the motions, finding that these referred issues fell within the "primary jurisdiction" of the Board.  Railroad Salvage and Wiedeman then filed separate petitions with the Board to obtain a determination of the issues referred by the federal district court and the Missouri circuit court.  On December 20, 2007, the Board agreed to decide the referred issues, and the Board also consolidated Railroad Salvage's and Wiedeman's petitions.

On July 20, 2010, the Board issued an order.  In the order, the Board decided the five referred issues, holding that there was insufficient evidence to find that MNA had calculated demurrage charges in the ways that Petitioners had alleged.  In addition to deciding the five referred issues (which the Board discussed in its order under the heading "COURT-REFERRED ISSUES"), the Board decided four issues that neither the federal district court nor the Missouri circuit court had explicitly referred to the Board.  The Board discussed these non-referred issues in its order under the heading "OTHER ISSUES."  One of the non-referred issues that the Board decided was the interest-rate issue.  As to this issue, the Board concluded that MNA had not committed

---

[2] Specifically, both Petitioners claimed that MNA engaged in unreasonable practices by charging demurrage on rail cars (1) that were "constructively placed," because MNA did not provide timely notice of such placement, (2) that were "private cars held on private tracks, because such cars are excepted from demurrage charges," (3) that were "held in [MNA's] yard in anticipation of car orders not yet made by [Petitioners]," (4) that were "not delivered because of [MNA's] disability," and (5) "for which [MNA] does not have adequate proof of dates of actual or constructive placement."  Additionally, Petitioners claimed they were not liable for their accrued demurrage charges because MNA had agreed to waive the charges in exchange for Petitioners' continued use of MNA's services.

-4-

an unreasonable practice by charging Petitioners interest on unpaid demurrage charges at a rate of 1–2% per month.

In their joint petition, Railroad Salvage and Wiedeman now seek review of the Board's determination of the interest-rate issue. The Board has filed a motion to dismiss, arguing that we lack jurisdiction to review the Board's determination of this issue to the extent Railroad Salvage raises it. According to the Board, the federal district court that originally referred the five issues raised by Railroad Salvage has exclusive jurisdiction to review the Board's determination of the interest-rate issue to the extent Railroad Salvage raises it.[3]

## II. Discussion

The Board is a federal regulatory agency that administers statutes governing railroad "rates, service, tracks, and . . . operations." DeBruce Grain, Inc. v. Union Pac. R.R. Co., 149 F.3d 787, 788 (8th Cir. 1998) (citing 49 U.S.C. § 10501). Generally, we have jurisdiction to review final orders of the Board. This authority is granted by 28 U.S.C. § 2321(a), which states, "Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Surface Transportation Board shall be brought in the court of appeals." As the text of § 2321(a) indicates, however, there are exceptions to § 2321(a)'s grant of jurisdiction. Relevant to this case, 28 U.S.C. § 1336(b) provides,

---

[3] On October 18, 2010, Railroad Salvage also filed a motion with the federal district court that referred the five issues to the Board. In this motion, Railroad Salvage sought the district court's review of the Board's determination of both referred and non-referred issues. On December 29, the district court issued an order declining to review the Board's order until this court has determined which court has jurisdiction to review the Board's resolution of the non-referred issues.

When a district court or the United States Court of Federal Claims refers a question or issue to the Surface Transportation Board for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Surface Transportation Board arising out of such referral.

The question before this court is whether the Board's determination of the interest-rate issue as to Railroad Salvage "ar[ose] out of" the federal district court's referral of the five issues raised by Railroad Salvage relating to MNA's allegedly unreasonable demurrage-charge calculations. If so, then § 1336(b) grants the referring district court exclusive jurisdiction to review the issue.

The Board argues that its determination of the interest-rate issue "ar[ose] out of" the district court's referral. According to the Board, even though the interest-rate issue was not expressly part of the referral, the Board's resolution of the issue arose out of the district court's referral to the Board of issues raised by Railroad Salvage because all six issues relate to the validity of charges imposed *by* the same entity, *against* the same entity, "pursuant to the same tariffs, during the same time periods, with regard to operations at the same rail yard." Therefore, according to the Board, § 1336(b) grants the referring court exclusive jurisdiction to review the Board's determination of the interest-rate issue with respect to Railroad Salvage.

In response, Petitioners argue that the Board's determination of the interest-rate issue did not "aris[e] out of" the district court's referral. According to Petitioners, a referring court only has exclusive jurisdiction pursuant to § 1336(b) to review the Board's determination of issues that the court explicitly refers to the Board. Since in this case the referring court did not expressly refer the interest-rate issue to the Board, Petitioners argue that § 1336(b) is inapplicable and that § 2321(a) vests this court with jurisdiction to review the Board's determination of the interest-rate issue.

Contrary to Petitioners' argument, the language of § 1336(b) suggests that a referring court's exclusive jurisdiction is not limited to reviewing only the Board's determination of explicitly referred issues. Section 1336(b) provides that a district court or the United States Court of Federal Claims has the power to refer a "question or issue" to the Board. After the Board has decided the referred question or issue, however, § 1336(b) by its terms does not state that the referring court has exclusive jurisdiction only to review the Board's resolution of the referred "question or issue." Instead, the statute states that the referring court has jurisdiction to review "in whole or in part, any order of the [Board] arising out of such referral." Thus, the statute defines the scope of a court's referral power relatively precisely, but it defines the scope of a referring court's exclusive jurisdiction more ambiguously. If Congress intended a referring court's exclusive jurisdiction to be limited to a review of the Board's determination of the referred "question or issue," Congress could have made this intent clear in § 1336(b) by using the same precision in defining the scope of a referring court's exclusive jurisdiction as Congress used in defining the scope of a court's referral power.

The legislative history for § 1336(b) indicates that Congress intended the statute to vest referring courts with exclusive jurisdiction to review more than just the Board's determination of explicitly referred questions and issues. In enacting § 1336(b), Congress sought to avoid "cumbersome and inefficient" review of Board orders that followed a referral by a district court or the United States Court of Federal Claims. S. Rep. 88-1394, at 3235 (1964). As the Seventh Circuit has noted, one way Congress sought to avoid such cumbersome and inefficient review was by preventing "[t]he court of appeals . . . [from] hav[ing] to hear the same case twice—once in reviewing the [Board's] order and the second time in reviewing the district court's final judgment." Ry. Labor Executives' Ass'n v. Interstate Commerce Comm'n, 894 F.2d 915, 917 (7th Cir. 1990). In this case, such cumbersome and inefficient review would result if we interpret § 1336(b) as providing the referring district court with the exclusive jurisdiction only to review the Board's determinations of the five issues that

the court explicitly referred to the Board. This is because we would first review the Board's determination of the non-referred issue (i.e., the interest-rate issue). Then, the parties may eventually ask this court to review the referring district court's review of the Board's determination of the explicitly referred issues or the referring district court's resolution of issues that the parties never presented to the Board. However, if we interpret § 1336(b) as providing the referring district court with exclusive jurisdiction to review the interest-rate issue, we would eliminate the risk that this court will engage in a bifurcated review of this case. Id.

The Third Circuit has found that § 1336(b) may vest a referring court with the exclusive jurisdiction to review more than just the Board's determination of explicitly referred questions and issues. In Union Pacific Railroad Co. v. Ametek, Inc., railroad companies sued a shipper in a federal district court to recover demurrage charges. 104 F.3d 558, 559 (3rd Cir. 1997). The court "referred one issue to the ICC: the reasonableness of a demurrage charge."[4] Id. Instead of deciding this question, however, the ICC decided an issue that the referring court had not explicitly referred to the ICC: whether the railroad companies could even impose the demurrage charges at issue. Id. The ICC found that the railroad companies could not impose such charges. Id. The railroad companies sought review of the ICC's decision with the referring court pursuant to § 1336(b), and the court affirmed. Id. at 560.

On appeal, the Third Circuit found that § 1336(b) vested the referring court with exclusive jurisdiction to review the ICC's determination that railroad companies could not impose the demurrage charges at issue. Id. The Third Circuit acknowledged that the referring district court had not explicitly referred this issue to the ICC, but noted that the proceedings before the district court and ICC were "parallel," both proceedings arose "out of a single dispute," and "the district court's exercise of

---

[4] "ICC" refers to the Interstate Commerce Commission, which was the predecessor of the Board.

jurisdiction avoided cumbersome and potentially protracted bifurcation of judicial review." Id. at 562 (internal quotation marks omitted). Consequently, the court found that "the ICC's decision [could] fairly be characterized as related to and arising out of the district court's referral" for purposes of § 1336(b). Id.

After considering § 1336(b)'s text and legislative history, as well as the Third Circuit's opinion in Ametek, we reject Petitioners' argument that § 1336(b) only grants exclusive jurisdiction to referring courts to review the Board's determination of issues that the court explicitly referred to the Board. Instead, we believe that the federal district court that referred the five issues raised by Railroad Salvage has exclusive jurisdiction pursuant to § 1336(b) to review the Board's determination of the interest-rate issue with respect to Railroad Salvage, even though the court never explicitly referred the issue to the Board. The referring court's five explicitly referred issues and the interest-rate issue involve the same two parties (i.e., Railroad Salvage and MNA) and originate from the same basic dispute (i.e., Railroad Salvage's liability for the detention of over 300 rail cars from January 2005 to October 2006). Moreover, the referring district court's review of the interest-rate issue will prevent a "cumbersome and potentially protracted bifurcation of judicial review" in this court. Ametek,104 F.3d at 562. Thus, for purposes of § 1336(b), we believe the Board's determination of the interest-rate issue with respect to Railroad Salvage arose out of the district court's referral of the five issues raised by Railroad Salvage. Accordingly, the federal district court that originally referred the five issues raised by Railroad Salvage has exclusive jurisdiction to review the Board's determination of the interest-rate issue with respect to Railroad Salvage.

We acknowledge that our conclusion may appear to be at odds with an opinion of the D.C. Circuit. In McCarty Farms, Inc. v. Surface Transportation Board, the D.C. Circuit appeared to endorse the Petitioners' argument that the Board's determination of an issue only arises out of a court's referral for purposes of § 1336(b) if the referring court expressly referred the determined issue to the Board. See 158 F.3d

1294, 1300 (D.C. Cir. 1998).  The situation before the court in <u>McCarty Farms</u>, however, was different from the situation before the court in this case.

In <u>McCarty Farms</u>, plaintiff farmers initially sued a railroad in federal court on the grounds that the railroad had charged unreasonable shipping rates on particular cargo during a two-year period.  <u>Id.</u> at 1296.  The district court referred the issue of whether the railroad's rates were unreasonable to the Board.  Before the Board, however, the scope of the dispute expanded in two ways.  <u>Id.</u>  First, the farmers requested more relief before the Board than they had requested before the district court.  Second, the farmers' case before the Board was consolidated with a case brought by the State of Montana against the same railroad, and the State sought different relief than the farmers sought before the federal district court or the Board.  The D.C. Circuit found that the Board's determinations of issues relating to relief not sought before the referring district court did not arise out of the court's referral for purposes of § 1336(b).  <u>Id.</u> at 1298–1300.

In this case, Railroad Salvage did not expand the essential scope of the dispute between it and MNA by raising the interest-rate issue before the Board.  By raising the issue, Railroad Salvage asserted a defense to the payment of interest charges.  However, MNA had made Railroad Salvage's liability for interest charges part of the dispute between the parties by requesting this relief in its complaint filed with the referring district court.  Before both the referring court and the Board, therefore, the essential scope of the dispute included Railroad Salvage's liability for demurrage charges and interest due to Railroad Salvage's alleged detention of over 300 rail cars from January 2005 to October 2006.  Had the essential scope of the dispute before the referring court changed when it reached the Board, we might agree with the D.C. Circuit's conclusion in <u>McCarty Farms</u> that the Board's determination of issues that expanded the scope of the dispute between the parties could not have arisen out of the court's referral.  We are not confronted with such a situation, however, so our conclusion that the Board's determination of the interest-rate issue arose out of the

district court's referral for purposes of § 1336(b) does not conflict with the D.C. Circuit's holding in <u>McCarty Farms</u>.

## III. Conclusion

For the foregoing reasons, we dismiss the petition to the extent it asks this court to review the Board's determination of the interest-rate issue as to Railroad Salvage. Although our jurisdiction to review the Board's determination of the interest-rate issue as to Wiedeman is not in dispute, our resolution of this issue could moot the referring district court's resolution of the issue with respect to Railroad Salvage. To ensure that the district court is allowed a meaningful review of the issue, therefore, we will hold the petition in abeyance to the extent Wiedeman seeks review of the Board's determination of the interest-rate issue.

_____